Citation Nr: 1708254 
Decision Date: 03/17/17 Archive Date: 04/03/17

DOCKET NO. 10-29 125 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to an initial rating in excess of 10 percent for degenerative disc disease of the lumbosacral spine, to include the period prior to December 2, 2013.

2. Entitlement to an initial rating in excess of 20 percent for degenerative disc disease of the lumbosacral spine, to include the period since December 2, 2013.

3. Entitlement to an initial rating in excess of 10 percent for radiculopathy of the left lower extremity associated with the degenerative disc disease of the lumbosacral spine.

4. Entitlement to a total disability rating based upon individual unemployability (TDIU) due to service-connected disabilities.


REPRESENTATION

Veteran represented by: Texas Veterans Commission

WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

S. Medina, Associate Counsel


INTRODUCTION

The Veteran served on active duty from January 1965 to September 1970. He also had reserve service. 

This appeal comes before the Board of Veterans' Appeals (Board) from a January 2010 rating decisions by the Houston, Texas Regional Office (RO) of the United States Department of Veterans Affairs (VA). In the January 2010 rating decision, the RO granted service connection for lumbosacral degenerative disc disease and assigned a 10 percent disability rating. The RO also granted service connection for a left lower extremity radiculopathy, and assigned a 10 percent disability rating. In October 2012, the Veteran testified at a travel board hearing before the undersigned Veterans Law Judge. This matter was previously remanded in January 2013.

In April 2016, the RO increased the initial evaluation for the lumbosacral spine to 20 percent disabling, effective April 19, 2016 and also denied entitlement to individual unemployability. However, in December 2013, the RO assigned the 20 percent evaluation for the degenerative disc disease of the lumbosacral spine an effective date as of December 2, 2013. 





FINDINGS OF FACT

1. Prior to December 2, 2013, the Veteran's degenerative disc disease of the lumbosacral spine has been manifested by no worse than limitation of flexion to 75 degrees and a combined range of motion of 210 degrees; limitation of flexion between 30 and 60 degrees, a combined range of motion less than 120 degrees, muscle spasm or guarding resulting in abnormal gait or spinal curvature, or incapacitating episodes have not been demonstrated. 

2. Since December 2, 2013, the Veteran's degenerative disc disease of the lumbosacral spine has been manifested by no worse than limitation of flexion to 50 degrees and a combined range of motion of 165 degrees; forward flexion of 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine, or incapacitating episodes have not been demonstrated.

3. For the entire period on appeal, the Veteran's left lower extremity radiculopathy was manifested by no more than mild incomplete paralysis of the sciatic nerve, to include symptoms such as numbness and pain radiating down the Veteran's left leg.

4. The evidence does not show that it is at least as likely as not that that the Veteran's service-connected disabilities precluded him from securing and following substantially gainful employment.


CONCLUSIONS OF LAW

1. Prior to December 2, 2013, the criteria for an initial disability rating higher than 10 percent for degenerative joint disease of the lumbosacral spine have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321(b), 4.1, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5243 (2016).

2. Since December 2, 2013, the criteria for an initial disability rating higher than 20 percent for degenerative joint disease of the lumbosacral spine have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321(b), 4.1, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5243 (2016).

3. The criteria for an evaluation in excess of 10 percent for left lower extremity radiculopathy for the entire period on appeal have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.7, 4.10, 4.120, 4.124, 4.124a, Diagnostic Code 8720 (2016).

4. The criteria for entitlement to TDIU have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16, 4.25 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Increased Rating

A. Degenerative Disc Disease of the Lumbosacral Spine prior to December 2, 2013

Disability ratings are determined by the application of the VA's Schedule for Rating Disabilities. Separate diagnostic codes identify the various disabilities, which are based, as far as practically can be determined, on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4 (2016). When rating a service-connected disability, the entire history must be borne in mind. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). The Board will also consider entitlement to staged ratings to compensate for times since filing the claim when the disability may have been more severe than at other times during the course of the claim on appeal. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 
In evaluating musculoskeletal disabilities, consideration must be given to additional functional limitation due to factors such as pain, weakness, fatigability, and incoordination. See 38 C.F.R. §§ 4.40 and 4.45; DeLuca v. Brown, 8 Vet. App. 202, 206-07 (1995). The Court of Appeals for Veterans Claims (Court) has held that diagnostic codes predicated on limitation of motion do not prohibit consideration of a higher rating based on functional loss due to pain on use or due to flare-ups under 38 C.F.R. §§ 4.40, 4.45, 4.59. See Johnson v. Brown, 9 Vet. App. 7 (1996); DeLuca, 8 Vet. App. at 206. However, in Mitchell v. Shinseki, 25 Vet. App. 32 (2011), the Court clarified that there is a difference between pain that may exist in joint motion as opposed to pain that actually places additional limitation of the particular range of motion.

VA regulations require that a finding of dysfunction due to pain must be supported by, among other things, adequate pathology. 38 C.F.R. § 4.40 ("functional loss due to pain is to be rated at the same level as the functional loss when flexion is impeded"); see Schafrath, 1 Vet. App. at 592. 

The Veteran's service-connected degenerative disc disease of the lumbosacral since has been evaluated under Diagnostic Code 5243 and is rated as 10 percent disabling prior to December 2, 2013 and as 20 percent disabling since December 2, 2013, pursuant to the General Rating Formula for Diseases and Injuries of the Spine. 38 C.F.R. § 4.71a, Diagnostic Code 5243. Either of two sets of criteria may be applied. The disc disease may be rated based on the cumulative amount of time in which the condition was incapacitating over the prior 12 months, or based upon the degree of limitation of motion. 38 C.F.R. § 4.71a. 

Under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, intervertebral disc syndrome with incapacitating episodes having a total duration of at least two weeks but less than four weeks during the past 12 months warrants the assignment of a 20 percent rating. Intervertebral disc syndrome with incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past 12 months is assigned a 40 percent rating. A 60 percent rating is warranted for incapacitating episodes having a total duration of at least six weeks during the past 12 months. 38 C.F.R. § 4.71a. An "incapacitating episode" for purposes of totaling the cumulative time is defined as "period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician." 38 C.F.R. § 4.71a, Diagnostic Code 5243, Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, Note 1.

Although the Veteran has reported being incapacitated on occasion, there is no record of any order or directive from a doctor requiring bed rest. Post-service treatment records reflect no periods of bed rest or total incapacitation. The Veteran has competently and credibly reported episodes of increased symptoms; he stated that he is incapacitated and has to lie down and has bad days with his back about five days per month. However, in the absence of any medical statement indicating that bed rest and regular treatment were required during those periods, the definition of "incapacitating episode" has not been met at any time during the appellate period. Evaluation under these criteria is therefore not appropriate, but instead evaluation under the General Rating Formula for Diseases and Injuries of the Spine is proper.

Under the General Rating Formula for Diseases and Injuries of the Spine, the disability is evaluated with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease. A 10 percent rating is assigned when forward flexion of the thoracolumbar spine is greater than 60 degrees, but not greater than 85 degrees; when the combined range of motion of the thoracolumbar spine is greater than 120 degrees, but not greater than 235 degrees; when muscle spasm, guarding, or localized tenderness does not result in either an abnormal gait or abnormal spinal contour; or when there is a vertebral body fracture with loss of 50 percent or more of the height. A 20 percent evaluation is warranted when forward flexion of the thoracolumbar spine is greater than 30 degrees, but not greater than 60 degrees; when the combined range of motion of the thoracolumbar spine is not greater than 120 degrees; or when muscle spasm or guarding is severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent evaluation requires either that forward flexion of the thoracolumbar spine is limited to 30 degrees or less, or that favorable ankylosis of the entire thoracolumbar spine is shown. Unfavorable ankylosis of the thoracolumbar spine warrants a 50 percent evaluation, and unfavorable ankylosis of the entire spine is rated 100 percent disabling. 38 C.F.R. § 4.71a.

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, normal extension is zero to 30 degrees, normal left and right lateral flexion is zero to 30 degrees, and normal left and right lateral rotation is zero to 30 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5237, Note 2. Further, all measured ranges of motion should be rounded to the nearest five degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5237, Note 4. Ankylosis is a condition in which an entire spinal segment is immobile and fixed in position. Unfavorable ankylosis exists where the fixation is in flexion or extension, and the ankylosis results in one difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; and/or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) is considered favorable ankylosis. 38 C.F.R. § 4.71a, Diagnostic Code 5239, Note 5.

VA treatment records indicate that the Veteran reported chronic low back pain which was alleviated by sitting down for twenty minutes or so and was treated with oral steroids. Further, treatment has consistently been sought for the Veteran's back pain and has included various medications and manipulations, including exercise and stretching.

At a December 2009 VA examination the Veteran stated that he suffered from low back pain and stiffness since service and had been treated with various medications and manipulations which seemed to improve his pain for short periods of time. Range of motion testing reflected forward flexion to 90 degrees without pain but complaints of tightness, extension to 30 degrees without pain but complaints of tightness, right and left lateral rotation to 30 degrees with complaints of pain at 30 degrees right greater than left, and right and left lateral flexion to 30 degrees. The examiner noted that gait was normal for the Veteran. There was no evidence of pain with weight bearing. The Veteran was able to perform repetitive testing with at least three repetitions; there was no additional loss of function or range of motion after three repetitions. The VA examiner noted that the Veteran did not exhibit any increased fatigue, weakness, lack of endurance, or incoordination on repetitive motion testing. The Veteran did however, experience increased pain on repetitive motion testing, but no palpable muscle spasms. 

At a June 2012 VA examination, the Veteran reported chronic back pain which was aggravated by prolonged standing. The Veteran stated that he could walk a block without difficulty and that he has used a cane for balance. Range of motion testing reflected forward flexion to 75 degrees without pain, extension to 25 degrees without pain, right lateral flexion to 30 degrees without pain, left lateral flexion to 20 degrees with evidence of pain at 20 degrees, and right and left lateral rotation to 25 degrees without pain. The combined range of motion was equivalent to 210 degrees. There was no additional loss of function or range of motion after three repetitions. No guarding or muscle spasm of the thoracolumbar spine was noted. There was no ankylosis of the spine.

In April 2009, private treatment records indicate that the Veteran was examined by a neurologist who noted that the Veteran had a disk herniation at L4-5 which lateralized to the left and would be consisted with the Veteran's pain. The neurologist treated the Veteran with a second dose of steroids, the first dose having been administered by the Veteran's family physician. 

Based on a review of the entire record the Board finds that forward flexion is demonstrated to be greater than 60 degrees, even considering pain, and a combined range of motion is shown to be greater than 120 degrees. These findings are consistent with a 10 percent disability rating, not a rating in excess of 10 percent for the period prior to December 2, 2013 because no abnormal spinal curvature was shown nor was abnormal gait. 

The Board has considered whether a higher disability evaluation is warranted on the basis of functional loss due to pain or due to weakness, fatigability, incoordination, or pain on movement of a joint under 38 C.F.R. §§ 4.40 and 4.45. See also DeLuca, 8 Vet. App. at 202. Functional loss contemplates the inability of the body to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance, and must be manifested by adequate evidence of disabling pathology, especially when it is due to pain. 38 C.F.R. § 4.40. A part that becomes painful on use must be regarded as seriously disabled. Id.; see also DeLuca, 8 Vet. App. at 202. The Veteran has complained about back pain, but even considering pain, the evidence has not shown that the Veteran's forward flexion has ever been less than 60 degrees; moreover, his combined range of motion of the thoracolumbar spine is not consistently less than 120 degrees. As such, the Board concludes that the back pain is not of such severity as to merit a rating in excess of 10 percent rating at any point prior to December 2, 2013, even when contemplating pain, repetitive motion, and flare-ups, as these symptoms do not cause sufficient functional limitation.

B. Degenerative Disc Disease of the Lumbosacral Spine since December 2, 2013

Turning to the period since December 2, 2013, the Veteran was granted an increase in evaluation to 20 percent disabling. Initially, the Veteran was granted an increase in evaluation to 20 percent with an effective date of April 19, 2016. An April 2016 VA examination showed range of motion testing to be abnormal or outside of the normal range with forward flexion to 50 degrees with pain, extension to 10 degrees, right and left lateral flexion to 30 degrees with pain on the left, right lateral rotation to 25 degrees with pain, and left lateral rotation to 20 degrees. The combined range of motion was equivalent to 165 degrees. There was no evidence of pain with weight bearing. The Veteran was able to perform repetitive testing with at least three repetitions; there was no additional loss of function or range of motion after three repetitions. The exam was conducted during a flare-up, but pain, weakness, fatigability, and/or incoordination did not significantly limit the Veteran's functional ability. No guarding or muscle spasm of the thoracolumbar spine was noted. There was no ankylosis of the spine. The VA examiner noted that the Veteran did not have episodes of acute signs and symptoms due to intervertebral disc syndrome that required bed rest prescribed by a physician. It was noted that the Veteran uses a cane and a back brace.

However, in June 2016 the Veteran submitted private treatment records. Specifically, a December 2013 private treatment record from his chiropractor showed range of motion testing for the Veteran's lumbosacral spine of forward flexion to 60 degrees with pain, extension to 10 degrees with pain, and left and right lateral flexion to 10 degrees. The Veteran was treated with stretching and cold and hot packs. Per this evidence, the Veteran was given an earlier effective date of December 2, 2013. Additionally, the Veteran submitted private treatment records that ranged from December 2015 through May 2016 from an Interventional Pain Specialist, which included reports of back pain made by the Veteran which was treated by injections of epidural steroids. 

Based on a review of the entire record the Board finds that forward flexion is demonstrated to be greater than 30 degrees, even considering pain, and a combined range of motion is shown not greater than 120 degrees. These findings are consistent with a 20 percent disability rating, not a rating in excess of 20 percent.

The Board has considered whether a higher disability evaluation is warranted on the basis of functional loss due to pain or due to weakness, fatigability, incoordination, or pain on movement of a joint under 38 C.F.R. §§ 4.40 and 4.45. See also DeLuca, 8 Vet. App. at 202. Functional loss contemplates the inability of the body to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance, and must be manifested by adequate evidence of disabling pathology, especially when it is due to pain. 38 C.F.R. § 4.40. A part that becomes painful on use must be regarded as seriously disabled. Id.; see also DeLuca, 8 Vet. App. at 202. The Veteran has complained about back pain, but even considering pain, the Veteran's forward flexion is not consistently less than 30 degrees; moreover, his combined range of motion of the thoracolumbar spine is not consistently less than 120 degrees. As such, the Board concludes that the back pain is not of such severity as to merit a rating in excess of 20 percent rating at any point during the pendency of the appeal, even when contemplating pain, repetitive motion, and flare-ups, as these symptoms do not cause sufficient functional limitation. In this regard, it is important for the Veteran to understand that his complaints are, in part, a basis for these finding. Simply stated, if he did not have any problems with his back, there would be no basis for the current findings. The fact that the Veteran has problems with his back is not at issue, only the degree based on the standards that the Board must use. 
 
C. Radiculopathy

The Veteran was granted service connection for radiculopathy of the left lower extremity as secondary to the service-connected degenerative disc disease of the lumbosacral spine and assigned a 10 percent disability rating effective July 27, 2009. 

The Veteran's left lower extremity radiculopathy has been evaluated as 10 percent disabling under Diagnostic Code 8720 for incomplete neuralgia, which uses the same rating formula as Diagnostic Code 8520 for incomplete paralysis of the sciatica nerve. 38 C.F.R. §§ 4.71a, 4.124a, Diagnostic Codes 8520, 8720.

Under Diagnostic Code 8520, disability evaluations of 10, 20, 40 and 60 percent are assignable for incomplete paralysis of the sciatic nerve, which is mild, moderate, moderately severe, or severe with marked muscular atrophy, respectively. 38 C.F.R. § 4.124a, Diagnostic Code 8520.

A schedular maximum evaluation of 80 percent disabling is warranted for complete paralysis of the sciatic nerve, as manifested by: the foot dangles and drops, no active movement possible of muscles below the knee, flexion of knee weakened or (very rarely) lost. 38 C.F.R. § 4.124a, Diagnostic Code 8520. 

After a review of the evidence of record, the Board finds that the Veteran's radiculopathy of the left lower extremity is productive of no more than mild impairment. 

The VA examination in December 2009 specifically noted radiculopathy of the left lower extremity. The Veteran specifically reported sharp pain radiating down his left leg which is alleviated by sitting for approximately ten minutes. There was no locking. An evaluation for radiculopathy was assigned for the left lower extremity. 

A June 2012 VA examination noted no symptoms of radiculopathy; however, the Veteran complained of a sense of numbness and weakness in the left leg. Further, an April 2016 VA examination was also silent for radiculopathy. Specifically, the April 2016 examiner stated that the Veteran's current symptoms did not represent radiculopathy, but rather, irritation of the nerve L4, L5 and an intermittent dragging of the left leg was not found. Given the above evidence, the Board finds that an evaluation in excess of 10 percent is not warranted for the left lower extremity. 

Consideration has been given to assigning staged ratings; however, at no time during the period in question has the Veteran's radiculopathy warranted higher schedular ratings because, despite subjective complaints, radiculopathy has only ever been noted on exam once and was not found on continued examination. See Fenderson, 12 Vet. App. at 119.

D. Extraschedular Evaluations

The Board has also considered whether this case should be referred to the Director of the VA Compensation and Pension Service for extraschedular consideration under 38 C.F.R. § 3.321 (b)(1). 

The Court has held that the threshold factor for extraschedular consideration is a finding on part of the RO or the Board that the evidence presents such an exceptional disability picture that the available schedular evaluations for the service-connected disabilities at issue are inadequate. Therefore, initially, there must be a comparison between the level of severity and the symptomatology of the disability with the established criteria provided in the rating schedule for the disabilities. If the criteria reasonably describe the claimant's disability level and symptomatology, then the disability picture is contemplated by the rating schedule, the assigned evaluations are therefore adequate, and no referral for extra-schedular consideration is require. Thun v. Peake, 22 Vet. App. 111 (2008).

In the case at hand, the record reflects that the manifestations of the Veteran's back disability and left lower extremity radiculopathy are contemplated by the schedular criteria. There is no indication from the evidence of record that the Veteran has frequent hospitalizations or has even received frequent emergency treatment for these disabilities. In sum, there is no indication that the average industrial impairment from the Veteran's combined disability picture would be in excess of that contemplated by the assigned ratings. Accordingly, the Board has determined that referral of this case for extraschedular consideration is not in order.
The Board notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. 

In this case, the Veteran has reported symptoms including numbness and intermittent pain radiating down his left lower extremity, pain on motion of his back, reduced range of motion of his back, and reduced functionality because of his back disability. These symptoms have all been specifically attributed to his service-connected back disability and left lower extremity radiculopathy. See Mittleider v. West, 11 Vet. App. 181 (1998).

As there are no additional symptoms at issue in this case that have not been attributed to a specific-service connected condition, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.

II. TDIU

A total disability rating for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more. If there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more and the combined rating must be 70 percent or more. See 38 C.F.R. § 4.16(a) (2016). 

It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Therefore, in the case of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet these schedular percentage standards, the case should be submitted to the Director, Compensation and Pension Service, for extra-schedular consideration. See 38 C.F.R. § 4.16(b).

For a veteran to prevail on a claim for a TDIU rating, the record must reflect some factor which takes the case outside the norm. The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is a recognition that the impairment makes it difficult to obtain and keep employment. The question is whether a veteran is capable of performing the physical and mental acts required by employment, not whether the Veteran can find employment. See 38 C.F.R. 4.16(a). Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). 

In determining whether unemployability exists, consideration may be given to a veteran's level of education, special training and previous work experience, but not to his age or to any impairment caused by his non-service-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19 (2016). In other words, there must be a determination that the service-connected disabilities are sufficient to produce unemployability without regard to advancing age or a non-service-connected disability. 38 C.F.R. §§ 3.340, 3.341, 4.16.

Service connection is currently in effect for degenerative disc disease of the lumbosacral spine, rated at 20 percent; radiculopathy of the left lower extremity, rated at 10 percent; degenerative disc disease of the cervical spine, rated at zero percent; and bilateral hearing loss, rated at zero percent. The combined disability evaluation is 30 percent. Given the foregoing, at no time has the Veteran met the minimum schedular requirements for TDIU and the only basis for the assignment of a TDIU is on an extraschedular basis. 38 C.F.R. § 4.16 (2016). Thus, the question before the Board is whether the Veteran was unable to secure or follow a substantially gainful occupation solely by reason of his service-connected disabilities, such that referral for extraschedular consideration under 38 C.F.R. § 4.16(b) is warranted. 

The Board notes that the Veteran has not yet perfected his appeal with regard to his claim for an increase in evaluation for his service-connected bilateral hearing loss. However, the functional impact of the Veteran's hearing loss claim is of record, and without regard to the numerical rating, the Board can properly consider the TDIU claim because the Veteran's total disability picture is of record. Thus his service-connected hearing loss can properly be considered as it pertains to the TDIU claim and the issues are not so inextricably intertwined. See Harris v. Derwinski, 1 Vet. App. 180 (1991) (two issues are "inextricably intertwined" when they are so closely tied together that a final decision on one issue cannot be rendered until a decision on the other issue has been rendered). 

On the December 2009 VA back examination it was noted that the Veteran reported that he cannot do any heavy lifting, and requires frequent breaks at work and moves slower. Further, the Veteran tries to avoid prolonged standing and that his job is affected because of this. However, he is able to do minimal yard work and house repairs. Further, per the June 2012 Disability Benefits Questionnaires (DBQ) for the back and right arm/shoulder conditions, the examiner checked the box that the back and right arm/shoulder conditions did not affect the Veteran's ability to work. Moreover, per the April 2016 DBQ for the back condition, the Veteran stated that sitting and riding in a car can be difficult and during the day he avoids activities or he will use tramadol. Further, the Veteran stated that he is unable to be on his feet for 30-60 minutes without the pain in his back and leg being severe. 

A VA audiology examination from May 2012 shows that the examiner checked that the Veteran's bilateral hearing loss did not have any functional impact on his ability to work. However, the April 2016 hearing loss DBQ notes that the Veteran reported a significant amount of daily difficulty with speech and understanding in the presence of background noise, when in small groups and when on the telephone. The April 2016 examiner also noted that the Veteran may struggle with speech understanding when in a quiet one-on-one setting and will experience greater difficulty when in a less than ideal setting (i.e. background noise, speaker at a distance, etc.). However, during those times, the Veteran will benefit from a raised speaking voice, increased visual cues, and a slightly slower rate of speech. 

Lay statements of record show that the Veteran worked as a general manager of a truck station and that he had to quit due to not being able to perform his required work. Also of record are buddy statements from the Veteran's administrative assistant and his direct supervisor at the truck stop. The Veteran's administrative assistant who that the Veteran had been unable to perform most of the physical activities of his job and has been in and complained of increasing pain while at work. Further, she stated that she has witnessed the Veteran always using the hand rail to navigate up and down into his office and that he often has to brace himself against the counter when he is forced to work the cash register for more than a few minutes. Finally, she reported that on several occasions, the Veteran had been forced to leave work early because of his pain. Additionally, the Veteran's direct supervisor reported that the Veteran has been increasingly unable to perform all of the physical requirements of his job, which include heavy lifting, pushing, pulling, squatting, and standing on his feet for long periods of time. The supervisor stated that the Veteran was only able to perform about 40 percent of his job duties and that, due to his physical decline in health, the Veteran would be retiring from his job early. Further, the record reflects that after retiring from his job as a manager, he now currently owns a restaurant. However, the Veteran reports that he has had to hire someone to manage the restaurant as he has been unable to. 

Although the Veteran is not capable of standing for long periods of time, as reflected by the evidence, there is nothing in the record that demonstrates that the Veteran could not secure and follow substantially gainful employment in a more sedentary occupation. Specifically, the Veteran was a pilot, he has had managerial experience, and has owned and operated a small business. As discussed, his service-connected disabilities affect his ability to do physical activities such as heavy lifting and standing. This is not at issue: The Veteran's current rating will, by definition, cause the Veteran problems. If it did not, there would be no basis for the current findings. 

Based on the above, the Board finds that entitlement to TDIU is not warranted. While the Veteran reported not having been substantially gainfully employed during the period on appeal, the evidence failed to show that the Veteran was unemployable due solely to his service-connected disabilities. 

Further, while the Veteran's service-connected disabilities have been found to cause some impact on his daily functioning and occupationally, that impact was considered in the ratings assigned. Specifically, at no time during the period on appeal did a VA examiner or another physician state that the Veteran's service-connected disabilities, that is, degenerative disc disease of the lumbosacral spine, radiculopathy of the left lower extremity, degenerative disc disease of the cervical spine, and bilateral hearing loss, precluded him from gainful employment. Therefore, the Board finds that the preponderance of the probative evidence does not otherwise show that the service-connected disabilities alone prevented the Veteran from obtaining and maintaining substantially gainful employment.

Again, the issue is not whether the Veteran is unemployed or has difficulty finding employment, but rather, whether the Veteran is capable of performing acts required by employment. See Van Hoose, 4 Vet. App. at 363. Here, the preponderance of the evidence of record demonstrates that the Veteran was not precluded from securing and following substantially gainful employment. 

Accordingly, referral for extraschedular consideration of TDIU pursuant to 38 C.F.R. § 4.16(b), is not warranted and the claim for TDIU is denied. 

In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b) (West 2002); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-56 (1990).




III. Duty to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. VA's duty to notify was satisfied by a letter in August 2009. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016); see also Scott v. McDonald, 789 F.3rd 1375 (Fed. Cir. 2015).

Here, this appeal arises from the Veteran's disagreement with the initial evaluation following the grant of service connection for degenerative disc disease of the lumbosacral spine and radiculopathy of the left lower extremity. Once service connection is granted, the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). No additional discussion of the duty to notify is therefore required.

VA also has a duty to assist the Veteran in the development of the claim, which is not abrogated by the granting of service connection. This duty includes assisting the Veteran in the procurement of service treatment records, and pertinent treatment records and providing an examination when necessary. Concerning the duty to assist, the record reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran, including service treatment records, post-service treatment records, private treatment records and VA examination reports. 

The Veteran was also afforded a hearing before the Board and a copy of the transcript is of record. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) requires that the Veterans Law Judge (VLJ) who chairs a hearing explain the issues and suggest the submission of evidence that may have been overlooked. Here, the VLJ identified the issues to the Veteran, and the Veteran testified as to his treatment history, symptomatology, and functional impairment associated with his service connected conditions. The hearing focused on the elements necessary to substantiate the claim, and the Veteran provided testimony relevant to those elements. Neither the Veteran nor his representative has asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), nor have they identified any prejudice in the conduct of the Board hearing. 

As there is no allegation that the hearing provided to the Veteran was deficient in any way, further discussion of the adequacy of the hearing is not necessary. Dickens v. McDonald, 814 F.3d 1359 (Fed. Cir. 2016). 

As such, the Board finds that no further action pursuant to Bryant is necessary, and the Veteran is not prejudiced by a decision at this time.

The Board also notes that actions requested in the prior remand have been undertaken. In this regard, additional treatment records were obtained, the Veteran underwent a VA examination, and a medical opinion was obtained. Accordingly, the Board finds that there has been substantial compliance with the prior remand instructions and no further action is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)). 
 
After a careful review of the file, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993). 

ORDER

An initial rating in excess of 10 percent for degenerative joint disease of the lumbosacral spine for the period prior to December 2, 2013 is denied.

An initial rating in excess of 20 percent for degenerative joint disease of the lumbosacral spine for the period since December 2, 2013 is denied.

An initial rating in excess of 10 percent for radiculopathy of the left lower extremity for the entire period on appeal is denied.

Entitlement to TDIU is denied. 



JOHN J. CROWLEY
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs